468 S.E.2d 167

Glen A. MURPHY and Gretchen A. Murphy, Plaintiffs Below, Appellants,

v.

John D. SMALLRIDGE, Jr., Individually, and John D. Smallridge, Jr., as Trustee for the H.H. Smallridge Trust, U.W., and H.H. Smallridge Trust, U.W., Defendants Below, Appellees.

No. 22863.

Supreme Court of Appeals of West Virginia.

Submitted Jan. 16, 1996.

Decided Feb. 14, 1996.

Charles W. Yeager, Andrew L. Paternostro, Rose & Atkinson, Charleston, for Appellants.

Richard G. Conley, Smith & Conley, Charleston, for Appellees.

CLECKLEY, Justice:

The plaintiffs below and appellants herein, Glen A. Murphy and Gretchen A. Murphy, appeal the final order of the Circuit Court of Kanawha County entered on September 14, 1994. In that order, the circuit court granted a motion for summary judgment made by the defendants below and appellees herein, John D. Smallridge, Jr., individually, and

John D. Smallridge, Jr., as Trustee for the H.H. Smallridge Trust, U.W., and H.H. Smallridge Trust, U.W.[1] The plaintiffs argue the circuit court erred when it dismissed their complaint and ruled they failed to state a cause of action.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In their complaint, the plaintiffs allege that on or about May 1, 1990, they entered into a lease agreement with the defendants to rent a house in Charleston, West Virginia. At the expiration of the lease on June 1, 1991, the lease became a month-to-month tenancy. According to the terms of the lease, the defendants could terminate the lease at any time with thirty days written notice.[2] The lease also provided that the plaintiffs were to "keep the premises in a neat, clean and orderly fashion, and return the premises to the Lessor in the same condition, reasonable wear and tear excepted." The plaintiffs assert that it became impossible for them to comply with this term of the lease because during their residency the defendants, acting by and through their agent, John D. Smallridge, Jr., began and continued to dump "dirty unsightly trash in the yard of the leased premises."

The plaintiffs state they complained to the defendants about the dumping on numerous occasions between December, 1990, and September, 1991, and asked the defendants to cease dumping on the leased premises. After the defendants failed to respond to the requests, the plaintiffs anonymously reported the dumping to the West Virginia Department of Natural Resources (DNR) on September 23, 1991. On September 26, 1991, an investigator from the DNR inspected the leased premises and notified the defendants that the dumping was illegal.

By letter dated September 27, 1991, the day after the defendants were notified by the DNR, the defendants informed the plaintiffs the lease was being terminated as a result of a change of plans for the leased premises. The plaintiffs were given thirty days to vacate the premises. After some discussion about the personal situation of the plaintiff Gretchen Murphy, the defendants agreed to allow the plaintiffs to remain in the house for an additional $150 per month in rent.[3] Instead, the plaintiffs vacated the premises and filed suit. The primary issue below and on appeal is whether the plaintiffs can state an affirmative cause of action for retaliatory eviction in light of the fact that they vacated the premises and, therefore, do not offer it as a *defense* to an eviction proceeding. The plaintiffs further assert in their brief that read fairly their complaint also states a cause of action for a breach of the warranty of habitability.

## II.

## STANDARD OF REVIEW

The plaintiffs contend the circuit court erred by dismissing their complaint for failure to state a claim.[4] We review *de novo* a dismissal under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, construing the factual allegations in the light most favorable to the plaintiffs. *State ex rel. McGraw v. Scott Runyan Pontiac–Buick,* 194 W.Va. 770, 775–76, 461 S.E.2d 516, 521–22 (1995). Dismissal for failure to state a claim is proper where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59, 65 (1984), citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80, 84 (1957). An appellate court is not limited to the legal

---

1. In their brief, the plaintiffs state the motion for summary judgment was treated as a motion to dismiss.

2. Paragraph 15 of the lease states: "Lessor may terminate the lease at any time, by giving the Lessee thirty (30) days notice in writing of such termination. If so terminated and the rent has been paid in advance, the Lessee shall be entitled to a refund of the rent from the date Lessee vacates the premises."

3. The lease dated May 1, 1990, provides the tenants were to pay $350 per month in rent.

4. In its order, the circuit court suggested it was using summary judgment as the procedural vehicle for the dismissal; however, we find the dismissal should have been premised under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. We are not bound by the label employed below, and we will treat the dismissal as one made pursuant to Rule 12(b)(6).

grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support.

## III.

## RETALIATORY EVICTION AS AN AFFIRMATIVE CAUSE OF ACTION

At common law, a landlord had the authority to "terminate a periodic tenancy for any reason or no reason, through the timely service upon the tenant of a notice to quit." 2 Richard R. Powell, *Powell on Real Property* ¶ 234 at 16B–81 (1995). (Footnote omitted). However, the freedom of a landlord to terminate a lease has been limited in recent years by public policy that prevents a landlord from evicting a tenant out of retaliation for the tenant exercising certain legal rights. 2 Powell, *supra* at 16B–81; *Retaliatory Eviction of Tenant for Reporting Landlord's Violation of Law*, 23 A.L.R.5th 140, 150 (1994). These changes in public policy are reflected in both emerging case law and statutory law. 23 A.L.R.5th at 150.

In the landmark decision of *Edwards v. Habib*, 397 F.2d 687 (1968), *cert. denied*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969), the United States Court of Appeals for the District of Columbia became the first court to recognize the defense of retaliatory eviction. In *Edwards*, the tenant rented housing from her landlord on a month-to-month basis. 397 F.2d at 688. The landlord failed to correct certain sanitary code violations so the tenant complained to the Department of Licenses and Inspections (Department). 397 F.2d at 688. Upon inspection, the Department discovered forty violations and ordered the landlord to rectify the situation. 397 F.2d at 688–89. Thereafter, the landlord gave the tenant "a 30–day statutory notice to vacate and obtained a default judg-

ment for possession of the premises." 397 F.2d at 689. (Footnotes omitted).

In holding a tenant cannot be evicted for reporting housing and sanitary code violations, the court of appeals recognized that the "[e]ffective implementation and enforcement of the codes obviously depend in part on private initiative in the reporting of violations." 397 F.2d at 700. Therefore, if retaliatory evictions are permitted, they "would clearly frustrate the effectiveness of the housing code as a means of upgrading the quality of housing in Washington." 397 F.2d at 700–01. (Footnote omitted). Moreover, it not only would punish the tenant for reporting violations "but also would stand as a warning to others that they dare not be so bold[.]" 397 F.2d at 701.

In West Virginia, this Court first addressed the defense of retaliatory eviction in *Criss v. Salvation Army Residences*, 173 W.Va. 634, 319 S.E.2d 403 (1984). In *Criss*, one argument raised by the tenants was that W.Va.Code, 55–3A–1, *et seq.*, "denies them an adequate remedy for the defense of retaliatory eviction."[5] 173 W.Va. at 640, 319 S.E.2d at 409. We disagreed and, with little discussion, stated that the defense of retaliation specifically exists under W.Va.Code, 55–3A–3(g) (1983).[6] Later, we revisited and more fully explained the doctrine of retaliatory eviction in *Imperial Colliery Co. v. Fout*, 179 W.Va. 776, 373 S.E.2d 489 (1988).

In *Imperial Colliery Co.*, a landlord brought an eviction proceeding against a tenant who in response raised the defense of retaliatory eviction. 179 W.Va. at 777, 373 S.E.2d at 490. The tenant argued the landlord wanted to evict him because he was involved in a labor strike. 179 W.Va. at 777, 373 S.E.2d at 490. The case presented two issues for this Court to resolve. The first issue was "whether a residential tenant who is sued for possession of rental property under W.Va.Code, 55–3A–1, *et seq.*, may assert retaliation by the landlord as a de-

**5.** W.Va.Code, 55–3A–1, *et seq.*, sets forth the "remedies for wrongful occupation of residential rental properties." (Capitalization of title deleted).

**6.** W.Va.Code, 55–3A–3(g), provides:

"Absent an issue of title, *retaliation*, or breach of warranty, and in the event of an

appeal wherein the tenant prevails, if the term of the lease has expired the relief ordered by the appellate court shall be for monetary damages only and shall not restore the tenant to possession. During the pendency of any such appeal no tenant shall be entitled to remain in possession of the leasehold if the period of the tenancy has otherwise expired." (Emphasis added).

fense[.]" 179 W.Va. at 777, 373 S.E.2d at 490. The second issue was "whether the retaliation motive must relate to the tenant's exercise of a right incidental to the tenancy." 179 W.Va. at 777, 373 S.E.2d at 490.

As to the first issue, we analyzed the development of retaliatory eviction from its inception with *Edwards, supra.* We found that "[m]any states have protected tenant rights either on the *Edwards* theory or have implied such rights from the tenant's right of habitability." 179 W.Va. at 779, 373 S.E.2d at 492. (Footnotes with citations omitted). Other jurisdictions, we said, have relied upon landlord and tenant reform statutes, such as section 5.101 of the Uniform Residential Landlord and Tenant Act, 7B U.L.A. 503 (1985),[7] to protect tenants. In West Virginia, a residential tenant is entitled to fit and habitable housing under W.Va.Code, 37–6–30 (1978),[8] and under our previous decision in *Teller v. McCoy,* 162 W.Va. 367, 253 S.E.2d 114 (1978).[9] Upon this basis, we determined in *Imperial Colliery Co.* that "[i]f the right to habitability is to have any meaning, it must enable the tenant to exercise that right by complaining about unfit conditions without fear of reprisal by his landlord." 179 W.Va. at 780, 373 S.E.2d at 493. (Citation omitted).

As to the second issue, however, we limited what would be considered protected activity by a tenant to that which is "incidental to the tenancy." 179 W.Va. at 781, 373 S.E.2d at 494. In the Syllabus, we held: "Retaliation may be asserted as a defense to a summary eviction proceeding under W.Va.Code, 55–3A–1, *et seq.,* if the landlord's conduct is in retaliation for the tenant's exercise of a right incidental to the tenancy." From the foregoing, we concluded that the tenant's involvement in a labor strike was not among those protected by the defense of retaliatory evic-

tion because it was not related to the tenancy relationship. 179 W.Va. at 781, 373 S.E.2d at 494.

Until now, we have not addressed the issue of whether a tenant may bring an affirmative cause of action for retaliatory eviction when the tenant exercises a right related to the tenancy. In support of their position that such a cause of action should exist, the plaintiffs cite *Aweeka v. Bonds,* 20 Cal.App.3d 278, 97 Cal.Rptr. 650 (1971). In *Aweeka,* 20 Cal.App.3d at 280, 97 Cal.Rptr. at 651, the tenants entered into a month-to-month oral agreement to rent an apartment. After the tenants took possession of the apartment, they informed their landlords that the ceiling in their bedroom leaked from the shower above them causing loose plaster to fall. The tenants also complained that their back door was faulty and needed repaired. Despite numerous complaints from the tenants, their landlords refused to repair the problems. The tenants, thereafter, wrote their landlords a letter stating that if the problems were not repaired they would have them repaired and deduct the cost from the next month's rent pursuant to the California Civil Code. The following month, the landlords notified the tenants that their rent would increase from $75 per month to $145 per month. 20 Cal. App.3d at 280, 97 Cal.Rptr. at 651.

The tenants were denied a preliminary injunction to prevent the rent increase or to prevent the landlords from instituting an unlawful detainer action, so they vacated the premises. Thereafter, the tenants filed an action seeking damages suffered as a result of their eviction. This action was dismissed, and the tenants appealed. 20 Cal.App.3d at 280–81, 97 Cal.Rptr. at 651.

At the outset, the California Court of Appeals stated that "[t]he reasonable value of

7. Section 5.101 of the Uniform Act, states, in part:
  "(a) Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for possession after:
  "(1) the tenant has complained to a governmental agency charged with responsibility for enforcement of a building or housing code of a violation applicable to the premises materially affecting health and safety; or
  "(2) the tenant has complained to the landlord of a violation [of the requirement to maintain the premises] under Section 2.104; or

  "(3) the tenant has organized or become a member of a tenant's union or similar organization."

8. W.Va.Code, 37–6–30, is a lengthy statute that sets forth the responsibility of a landlord with respect to residential property.

9. Although we did not address the issue of retaliatory eviction in *Teller,* we did establish remedies for residential tenants who were subjected to a breach of the warranty of habitability. *See* Syl. pts. 3, 4, and 5, *Teller, supra.*

the apartments on the premises was $75 per month and $145 was unfair, unreasonable and uneconomical, in view of the condition of the premises." 20 Cal.App.3d at 280, 97 Cal.Rptr. at 651. The court further determined that the landlords were aware of the tenants' inability to pay and the increase in rent "constituted an actual eviction." 20 Cal. App.3d at 280, 97 Cal.Rptr. at 651. Given that the California Supreme Court already had recognized the defense of retaliatory eviction on "substantially identical facts,"[10] the court of appeals stated:

> "We can discern no rational basis for allowing such a substantive defense while denying an affirmative cause of action. It would be unfair and unreasonable to require a tenant, subjected to a retaliatory rent increase by the landlord, to wait and raise the matter as a defense only, after he is confronted with an unlawful detainer action and a possible lien on his personal property (Civ.Code, § 1861a)." 20 Cal. App.3d at 281, 97 Cal.Rptr. at 652.

Therefore, the court of appeals concluded that the tenants' complaint for retaliatory eviction stated an affirmative cause of action. 20 Cal.App.3d at 281, 97 Cal.Rptr. at 652.

A similar result was reached by the Appellate Court of Illinois in *Morford v. Lensey Corp.*, 110 Ill.App.3d 792, 66 Ill.Dec. 372, 442 N.E.2d 933 (1982). In *Morford*, the tenants had a written lease for an apartment. At the expiration of the last renewal of that lease, the tenants continued to rent the apartment on a month-to-month basis. 110 Ill.App.3d at 793–94, 66 Ill.Dec. at 374, 442 N.E.2d at 935. According to the tenants' complaint, there were numerous defects in the apartment that were in violation of the city's minimum housing standards. The landlord was notified of the problems, but repairs were not performed. Therefore, the tenants contacted the Housing Inspection Department for the city and an inspection was conducted. The city informed the landlord that the problems must be corrected to comply with the housing code. Shortly after receiving notice from the city, the landlord gave the tenants a thirty-day notice to quit. 110 Ill.App.3d at 794, 66 Ill.Dec. at 374, 442 N.E.2d at 935. The tenants "were at all times in complete compliance with their obligations as tenants to the landlord. The tenants complied with the notice to quit and vacated the premises." 110 Ill.App.3d at 794, 66 Ill.Dec. at 374, 442 N.E.2d at 935. The tenants then filed an action against their landlord alleging, in part, retaliatory eviction. 110 Ill.App.3d at 794, 66 Ill.Dec. at 374, 442 N.E.2d at 935–36.

In determining whether the tenants could state an affirmative cause of action for retaliatory eviction, the appellate court observed that the defense of retaliatory eviction was recognized previously by the Illinois Supreme Court under Illinois Revised Statutes chapter 80, paragraph 71, section 1 (1979),[11] in *Clore v. Fredman*, 59 Ill.2d 20, 319 N.E.2d 18 (1974). 110 Ill.App.3d at 798, 66 Ill.Dec. at 377, 442 N.E.2d at 938. The appellate court determined that this statute indicated a broad public policy against retaliatory evictions and, therefore, must be construed liberally to accomplish its remedial purposes. 110 Ill.App.3d at 798, 66 Ill.Dec. at 377, 442 N.E.2d at 938. The appellate court then stated:

> "To permit the claim to be asserted only as a defense in eviction actions by a landlord would work to a landlord's benefit in those cases where an unknowing tenant vacates, after notice, unaware of his rights to a defense of retaliatory eviction. The purposes behind section 1 are better served where a tenant who has been forced to leave, as a result of his valid complaints about the condition of the premises, can also obtain relief as against the landlord outside of the forcible entry and detainer context." 110 Ill.App.3d at 798–99, 66 Ill. Dec. at 377, 442 N.E.2d at 938.

**10.** *Citing Schweiger v. Superior Court*, 3 Cal.3d 507, 90 Cal.Rptr. 729, 476 P.2d 97 (1970).

**11.** This section provided, in part:
" 'It is declared to be against the public policy of the State for a landlord to terminate or refuse to renew a lease or tenancy of property on the ground that the tenant has complained to any governmental authority of a bona fide violation of any applicable building code, health ordinance, or similar regulation.' " 110 Ill.App.3d at 798, 66 Ill.Dec. at 377, 442 N.E.2d at 938.
A substantially similar version of this statute now exists at Illinois Annotated Statutes chapter 765, paragraph 720, section 1 (Smith–Hurd 1993).

Thus, the appellate court concluded that the tenants could state an affirmative cause of action for retaliatory discharge. 110 Ill. App.3d at 799, 66 Ill.Dec. at 377, 442 N.E.2d at 938.

Although in West Virginia we do not have a statute similar to the one in Illinois, we agree with the reasoning of the appellate court when it said that to permit only a defense of retaliatory eviction would benefit a landlord whose "unknowing tenant vacates, after notice, unaware of his rights to a defense of retaliatory eviction." 110 Ill.App.3d at 798–99, 66 Ill.Dec. at 377, 442 N.E.2d at 938. Without an affirmative right to state a cause of action, the landlord—as the wrongdoer in a valid case of a retaliatory eviction—escapes impunity when a tenant complies with a landlord's demands and vacates the premises after given notice. It, therefore, would serve to punish the agreeable tenant and often would frustrate the goal of ensuring habitable housing. *See Edwards, supra;* W.Va.Code, 37–6–30. We can find no persuasive reason to create such an inequitable dichotomy between a tenant who vacates the premises and one who chooses to remain.[12]

We also agree with the logic of the California Court of Appeals in *Aweeka* when it stated "[i]t would be unfair and unreasonable to require a tenant, subjected to a retaliatory rent increase by the landlord, to wait and raise the matter as a defense only, after he is confronted with an unlawful detainer action and a possible lien on his personal property[.]"[13] 20 Cal.App.3d at 281, 97 Cal.Rptr. at 652. (Statute omitted). The tenants in the present case were faced with the possibility of being liable for an additional $150 per month in rent if they stayed on the premises.

■ Moreover, we continue to adhere to the principle announced in the Syllabus of *Imperial Colliery Co, supra,* that retaliatory eviction only can exist as a result of a tenant exercising "a right incidental to the tenancy."

Thus, we conclude that a residential tenant may state an affirmative cause of action for retaliatory eviction if the landlord's conduct is in retaliation for the tenant's exercise of a right incidental to the tenancy. In the present case, we have no problem finding that the tenants' report to the DNR of their landlords' dumping on the residential property they leased was incidental to their tenancy on such property.

■ Finally, the landlord in the present case argues that by vacating the premises, the tenants failed to mitigate the scope of their potential damages. However, in retaliatory eviction cases, a tenant typically has notified authorities of housing code violations. It would be contrary to the public policy of this State and common sense to rule that tenants must live in potentially dangerous conditions so that they could retain a cause of action for retaliatory eviction.[14] We hold that a residential tenant does not have to continue living on the leased premises to preserve a cause of action for retaliatory eviction.

IV.

CONCLUSION

For the foregoing reasons, we find that the Circuit Court of Kanawha County erred in granting the landlords' motion to dismiss. Therefore, this case is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

12. *But see Weisman v. Middleton,* 390 A.2d 996, 1001–02 (D.C.App.1978) (cursorily refusing to recognize an affirmative cause of action because the court found no authority for an affirmative action in that jurisdiction).

13. As previously mentioned, a landlord may bring an action for the wrongful occupation of

residential rental property pursuant to W.Va. Code, 55–3A–1, *et seq.*

14. We make no findings as to whether the dumping on the leased premises in the case at bar made it uninhabitable.