# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Edward Baez and Teresa Baez,**
**Plaintiffs Below, Petitioners**

**vs)  No. 17-0473** (Monongalia County 17-C-24)

**Foremost Insurance Company,**
**Defendant Below, Respondent**

**FILED**

**May 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioners Edward Baez and Teresa Baez, by counsel Alex J. Shook and Andrew G. Meek, appeal the Circuit Court of Monongalia County's April 24, 2017, order granting respondent's partial motion to dismiss. Respondent Foremost Insurance Company ("Foremost"), by counsel Robert L. Massie, filed its response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On July 12, 2016, Edward Baez was the passenger in a Ford owned and operated by William Gorbey. At that same time, Delbert Lemley (a defendant below) was driving a Jeep in the opposite direction. The vehicles were involved in a head-on collision, as a result of which Edward Baez alleges that he was seriously injured. In their complaint, filed on January 31, 2017, Teresa Baez claimed that she suffered a loss of consortium due to her husband's injuries. Mr. Lemley had liability bodily injury insurance coverage with Nationwide Insurance Company in the amount of $25,000 per person and $50,000 per occurrence. Due to the fact that at least two other claims for damages had been made against that coverage, the most petitioners could recover from Nationwide is $25,000. Petitioners reached a full and final settlement with their insurance company, Safeco Insurance, whereby Safeco offered its underinsured motorist bodily injury liability policy limit of $20,000.

At all times relevant to this action, petitioners owned two golf carts. Foremost issued an insurance policy covering those golf carts with a policy period that included July 12, 2016, and both petitioners were named insureds on that policy. The policy provided bodily injury and passenger liability coverage in the amount of $50,000 per person and $100,000 for each accident. While it provided uninsured motorist coverage, it did not provide underinsured motorist coverage. Petitioners filed suit below against Foremost and individual defendants in the Circuit Court of Monongalia County alleging that Foremost failed to make the required offer of

1

underinsured motorist ("UIM") bodily injury coverage so such coverage must be read into the policy to provide coverage.[1] On March 2, 2017, Foremost filed a partial motion to dismiss pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Petitioners submitted a response to that motion, arguing that Foremost was required under West Virginia law to offer UIM bodily injury coverage benefits in the amount of $50,000 per person and $100,000 per occurrence. They further claimed that as a result of failing to offer such coverage, UIM coverage should be read into the policy by operation of law. However, Foremost asserted that because golf carts are off-road vehicles not registered pursuant to West Virginia law that there was no requirement to offer underinsurance coverage. Following oral argument on that motion, the circuit court granted the partial motion to dismiss by order entered April 24, 2017.

In its order granting the partial motion to dismiss, the circuit court found that the Motor Vehicle Safety Responsibility Law does not require all motor vehicles to maintain security in the form of an insurance policy within the specified limits; it based that conclusion on its finding that that requirement applies only to owners or registrants of motor vehicles required to be registered and licensed in this state. It went on to state that "[a]lthough not specifically defined or described in the statutes, golf carts are not designed or intended for highway use – even less so than ATVs." It also found that

> [n]ormally, an insurer issuing an automobile insurance policy in West Virginia is required to make a commercially reasonable offer of underinsurance motorist coverage as well. The key issue in this case is whether the subject insurance policy falls within the requirement where the insurer must make an offer of UIM coverage.

It, therefore, concluded that because golf carts are not motor vehicles required to be licensed in West Virginia, the subject golf carts are excepted from the mandatory security provisions in the Motor Vehicle Safety Responsibility Law, including the motor vehicle liability insurance coverage mandated by West Virginia Code § 17D-4-2. "Thus, there is no requirement that if liability coverage is offered on a vehicle not defined as a motor vehicle, that underinsured bodily injury coverage must also be offered." Petitioners appeal from that order.

> "Dismissal for failure to state a claim is proper 'where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Murphy v. Smallridge,* 196 W.Va. 35, 37, 468 S.E.2d 167, 168 (1996). This Court has also held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995).

*Mey v. Pep Boys-Manny, Moe & Jack*, 228 W. Va. 48, 52, 717 S.E.2d 235, 239 (2011).

---

[1] The claims against the other defendants below, Delbert Lemley, Jason Halcomb, and Jenna Edmond, are not a part of this appeal.

On appeal, petitioners assert a single assignment of error: The circuit court erred by misapplying West Virginia Code § 33-6-31 regarding an insurance carrier's obligation to offer underinsured motorist coverage with the issuance of a bodily injury liability policy issued on petitioners' golf carts.[2] Petitioners contend that the plain language of West Virginia Code § 33-6-31(a) and (b) require an insurance carrier to offer UIM coverage. They argue that while an insurance carrier is not obligated to provide liability insurance to any motor vehicle, including a golf cart, once it does so it must offer not only uninsured motorist coverage but also UIM coverage. Petitioners further assert that the circuit court erred by incorrectly determining that because no liability insurance is required on a golf cart no UIM coverage is required to be offered. In support of their position, petitioners point to West Virginia Code § 17A-1-1(a) and (b), which define "vehicle" and "motor vehicle," asserting that any argument that a golf cart is an "off-road" vehicle, rather than a motor vehicle, for purposes of § 33-6-31 is not compelling because "off-road" vehicles are still "motor vehicles."

Petitioners also point to the definition of "motor vehicle" in the Foremost policy at issue, which is "a land 'motor vehicle' or a trailer but does not mean a vehicle: a. Operated on rails. b. Which is a farm type tractor designed or modified for use principally off public roads while not on a public road. c. Located for use as a residence or premises." They assert that because the policy language does not comply with the broad terms of West Virginia Code § 33-6-31(b), the policy must be construed to contain the coverage provided for by statute.

As this Court has previously recognized, "[a] motor vehicle that is not required to be registered and licensed pursuant to W.Va. Code §§ 17A-3-1, *et seq.* is excepted from the mandatory security provisions in the Motor Vehicle Safety Responsibility Law including motor vehicle liability coverage mandated by W.Va. Code § 17D-4-2." Syl. Pt. 7, *Boniey v. Kuchinski*, 223 W.Va. 486, 677 S.E.2d 922 (2009). We have also held that "[i]nsurers may incorporate such terms, conditions and exclusions in an automobile insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Syl. Pt. 3, *Deel v. Sweeney,* 181 W. Va. 460, 383 S.E.2d 92 (1989).

The Foremost policy included in the record before this Court clearly provides that it is an "Off-Road Vehicle Insurance Policy," and the policy defines an "Off-road vehicle" as "a self-propelled motorized vehicle which is designed primarily for off-road use and not licensed for use on public roads. . . ." The policy goes on to define "Your covered off-road vehicle," in relevant part, as "1. Any 'off-road vehicle' shown in the Declarations." The description of the "off-road

---

[2] "*W.Va. Code,* 33-6-31(b), as amended, on uninsured and underinsured motorist coverage, contemplates recovery, up to coverage limits, from one's own insurer, of full compensation for damages not compensated by a negligent tortfeasor who at the time of the accident was an owner or operator of an uninsured or underinsured motor vehicle." Syllabus Point 4, in part, *State Auto. Mut. Ins. Co. v. Youler,* 183 W.Va. 556, 396 S.E.2d 737 (1990).

Syl. Pt. 5, *Boniey v. Kuchinski*, 223 W. Va. 486, 677 S.E.2d 922 (2009).

vehicles" in the declarations undisputedly includes the two golf carts at issue in the instant action.

As this Court recently recognized in *Erie Insurance Company v. Dolly*, No. 16-1151, 2018 WL 1370627, *6, __ W.Va. __, __ S.E.2d __ (W.Va. March 12, 2018),

> [t]his Court found [in *Boniey*] that the Motor Vehicle Safety Responsibility Law, West Virginia Code § 17D-4-2, applies the insurance requirements to "motor vehicles"–but an ATV is not legally classified as a "motor vehicle" because it is expressly exempt from vehicle registration requirements by West Virginia Code § 17A-3-2(a)(6) (2004). *Boniey*, 223 W.Va. at 491-92, 677 S.E.2d at 927-28. We determined that "[w]here no liability insurance coverage is required on a motor vehicle under the financial responsibility law, obviously no uninsured motorist coverage is mandated to provide the equivalent of such coverage." *Id.* at 492, 677 S.E.2d at 928.

While a golf cart is specifically excluded from the definition of "all-terrain vehicle" in West Virginia Code § 17A-1-1(ii), the same reasoning employed in *Boniey* and *Dolly* applies in the instant matter. As the circuit court found, because low-speed vehicles and retrofitted golf carts are exempt from the vehicle registration requirements set forth in West Virginia Code § 17A-3-2(c), respondent was not required to offer UIM coverage to petitioners on the golf carts described in the declarations page of the policy at issue. Having reviewed the circuit court's April 24, 2017, "Order Granting Defendant, Foremost Insurance Company's, Partial Motion to Dismiss," we hereby adopt and incorporate the circuit court's well-reasoned findings and conclusions as to the assignment of error raised in this appeal. The Clerk is directed to attach a copy of that order to this memorandum decision.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 11, 2018

**CONCURRED IN BY:**

Chief Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA
DIVISION II

EDWARD BAEZ and
TERESA BAEZ,

       Plaintiffs,

v.

                                     CASE NO.: 17-C-24
                                     Judge Russell M. Clawges, Jr.

DELBERT LEMLEY,
JASON HOLCOMB,
JENNA EDMOND, and
FOREMOST INSURANCE COMPANY,

       Defendants.

## ORDER GRANTING DEFENDANT, FOREMOST INSURANCE COMPANY'S, PARTIAL MOTION TO DISMISS

This matter came before the Court on the 27th day of March 2017, on Defendant Foremost Insurance Company's Partial Motion to Dismiss. The Motion was filed March 2, 2017, pursuant to Rule 12(b)(6) of the Rules of Civil Procedure for failure to state a claim upon which relief can be granted. Plaintiffs filed a Response on March 23, 2017. Plaintiffs appeared, not in person, but by counsel, Andrew G. Meek. Defendant Delbert Lemley appeared by counsel, Laurie Barbe. Defendant, Foremost Insurance Company ("Foremost"), appeared by counsel Megan Basham Davis. Defendants Jason Holcomb and Jenna Edmond did not appear in person or by counsel.

The Court heard arguments of counsel and took the motion under advisement. The Court has studied the motion, responses, and the memoranda of law submitted by the parties; considered the arguments of counsel; and reviewed pertinent legal authorities. As a result of

1

these deliberations, the Court is ready to rule.

## FACTS and PROCEDURAL HISTORY

This action arises out of a motor vehicle accident that occurred on July 12, 2016, on Daybrook Road in Monongalia County. Plaintiff, Edward Baez, was a passenger in a Ford F150 truck, owned and operated by William Gorbey. At the same time, Defendant, Delbert Lemley, was driving a Jeep Liberty in the opposite direction. Defendants, Jason Holcomb and Jenna Edmond were passengers in Delbert Lemley's vehicle. The Ford truck and the Jeep Liberty ended up in a head-on collision. As a result of the accident, Edward Baez alleges he was seriously injured. Plaintiff, Teresa Baez brought a loss of consortium claim based on her husband's injuries.

Defendant Lemley has liability bodily injury insurance coverage with West Virginia National Insurance Company in the amount of $25,000.00 per person, $50,000.00 per occurrence. At least two other claims for damages have been made against this coverage, so the most the Plaintiffs can receive from this coverage is $25,000.00. Plaintiffs have reached full and final settlements with their insurance company, Safeco Insurance, whereby Safeco offered its underinsured motorist bodily injury liability policy limit of $20,000.00.

In addition, Plaintiffs own two golf carts. Defendant, Foremost, issued an insurance policy covering the two golf carts with a policy period that included July 12, 2016. Policy Number 276-0074270910 covers a 2001 EZ-Go golf cart and a 2011 EZ-Go "Bad Boy" cart for the policy period of May 19, 2016, to May 19, 2017. Plaintiffs Edward Baez and Teresa Baez were both named insureds on this policy.[1] The Policy provided bodily injury and passenger

---

1 Plaintiffs use the golf carts at Big Bear Lake Campground.

· 2

liability coverage in the amount of $50,000.00 for each person and $100,000 for each accident. This policy provides uninsured motorist coverage but not underinsured motorist coverage. The "Important Notice" accompanying the Policy Declarations Page expressly states that "Underinsured Motorists Coverage is not available for Off-Road Vehicles." Coverage under the Policy is the basis for this Motion.

Plaintiffs' claims against Foremost stem from Foremost's offer of insurance on the golf carts. Plaintiffs assert that Foremost was required under West Virginia law to offer underinsured motorist ("UIM") bodily injury coverage benefits in the amount of $50,000.00 per person and $100,000.00 per occurrence. Plaintiffs further claim that as a result of failing to do so, underinsured motorist coverage should be read into the policy by operation of law due to Foremost's exclusion of UIM coverage.

Foremost contends that golf carts are off-road vehicles that are not registered vehicles pursuant to West Virginia law; therefore; underinsurance coverage is not required to be offered.

## DISCUSSION

"Dismissal for failure to state a claim is proper 'where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " Murphy v. Smallridge, 196 W.Va. 35, 36 (1996).

Every motor vehicle, trailer, semitrailer, pole trailer and recreational vehicle when driven or moved upon a highway is subject to the registration and certificate of title provisions of this chapter with certain exceptions. W.Va. Code § 17A-3-2(a). "The division [of motor vehicles] shall title and register low-speed vehicles if the manufacturer's certificate of origin clearly

3

identifies the vehicle as a low-speed vehicle. The division may not title or register homemade low-speed vehicles or retrofitted golf carts[2] and such vehicles do not qualify as low-speed vehicles in this state." W.Va. Code § 17A-3-2(c).

West Virginia's Motor Vehicle Safety Responsibility Law, West Virginia Code Sections 17D-1-1 to 17D-6-7, states that:

> Every owner or registrant of a motor vehicle required to be registered and licensed in this state shall maintain security as hereinafter provided in effect continuously throughout the registration or licensing period except in case of a periodic use or seasonal vehicle, in which case the owner or registrant is required to maintain security upon the vehicle only for the portion of the year the vehicle is in actual use. As used in this section, a periodic use or seasonal vehicle means a recreational vehicle, antique motor vehicle, motorcycle or other motor vehicle which is stored part of the year and used seasonally.

W.Va. Code 17D-2A-3(a).

The Financial Responsibility statute is part of the Motor Vehicle Safety Responsibility Law, and states:

> Beginning January 1, 2016, "proof of financial responsibility" means proof of ability to respond in damages for liability, on account of accident occurring subsequent to the effective date of the proof, arising out of the ownership, operation, maintenance, or use of a motor vehicle, trailer or semitrailer in the amount of $25,000 because of bodily injury to or death of one person in any one accident, and, subject to the limit for one person, in the amount of $50,000 because of bodily injury to or death of two or more persons in any one accident, and in the amount of $25,000 because of injury to or destruction of property of others in any one accident.

W.Va. Code § 17D-4-2(b).

---

2 The Merriam-Webster Dictionary defines retrofit as 1: to furnish (something, such as a computer, airplane, or building) with new or modified parts or equipment not available or considered necessary at the time of manufacture; 2: to install (new or modified parts or equipment) in something previously manufactured or constructed; 3: to adapt to a new purpose or need.

The uninsured / underinsured motorist statute provides in applicable part:

No policy or contract of bodily injury liability insurance, or of property damage liability insurance, covering liability arising from the ownership, maintenance or use of any motor vehicle, may be issued or delivered in this state to the owner of such vehicle, or may be issued or delivered by any insurer licensed in this state upon any motor vehicle for which a certificate of title has been issued by the Division of Motor Vehicles of this state, unless it contains an endorsement or provisions undertaking to pay the insured all sums which he or she is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of section two, article four, chapter seventeen-d [17D-4-2] of this code, as amended from time to time.

* * *

[S]uch policy or contract shall provide an option to the insured with appropriately adjusted premiums to pay the insured all sums which he or she is legally entitled to recover as damages from the owner or operator of an uninsured or underinsured motor vehicle up to an amount not less than limits of bodily injury liability insurance and property damage liability insurance purchased by the insured without set off against the insured's policy or any other policy. Regardless of whether motor vehicle coverage is offered and provided to an insured through a multiple vehicle insurance policy or contract, or in separate single vehicle insurance policies or contracts, no insurer or insurance company providing a bargained for discount for multiple motor vehicles with respect to underinsured motor vehicle coverage may be treated differently from any other insurer or insurance company utilizing a single insurance policy or contract for multiple covered vehicles for purposes of determining the total amount of coverage available to an insured. "Underinsured motor vehicle" means a motor vehicle with respect to the ownership, operation or use of which there is liability insurance applicable at the time of the accident, but the limits of that insurance are either: (i) Less than limits the insured carried for underinsured motorists' coverage; or (ii) has been reduced by payments to others injured in the accident to limits less than limits the insured carried for underinsured motorists' coverage. No sums payable as a result of underinsured motorists' coverage may be reduced by payments made under the insured's policy or any other policy.

W.Va. Code 33-6-31(b).

"Insurers may incorporate such terms, conditions and exclusions in an automobile

insurance policy as may be consistent with the premium charged, so long as any such exclusions do not conflict with the spirit and intent of the uninsured and underinsured motorists statutes." Syl. Pt. 3, Deel v. Sweeney, 181 W.Va. 460 (1989).

"When an insurer is required by statute to offer optional coverage, it is included in the policy by operation of law when the insurer fails to prove an effective offer and knowing and intelligent rejection by the insured." Syl. Pt. 1, Bias v. Nationwide Mut. Ins. Co., 179 W.Va. 125 (1987).

"A motor vehicle that is not required to be registered and licensed pursuant to W.Va. Code §§ 17A-3-1, et seq. is excepted from the mandatory security provisions in the Motor Vehicle Safety Responsibility Law including motor vehicle liability coverage mandated by W.Va. Code § 17D-4-2." Syl. Pt. 7, Boniey v. Kuchinski, 223 W.Va. 486 (2009).

In summary, the Motor Vehicle Safety Responsibility Law does not require all motor vehicles to maintain security in the form of an insurance policy within the specified limits. Rather, the requirement applies only to owners or registrants of a motor vehicle required to be registered and licensed in this state.

Although the Plaintiffs agree that Foremost was not required to offer coverage on the golf carts, they argue that once Foremost voluntarily offered the liability coverage, it was then required to offer UIM coverage. Plaintiffs insist that because Foremost issued a bodily injury liability policy covering the Plaintiffs' golf carts, but did not offer UIM coverage, the Court should find that UIM coverage in the amount of $50,000.00 per person and $100,000.00 per accident is included in the policy by operation of law.

Plaintiffs insist that West Virginia Code § 33-6-31(a-b) requires an insurer to offer UM

6

and UIM coverage to its insured whenever any bodily injury liability policy is issued covering the ownership, maintenance, or use of any motor vehicle. Plaintiffs further contend that even if liability insurance is not required on the golf carts, the fact that the golf carts do have liability insurance changes the duty of Foremost. Plaintiffs argue that the voluntary issuance of the liability policy on the golf carts triggered a requirement on the part of Foremost to offer UM and UIM coverage. However, Plaintiffs do not offer any authority for this position.

Foremost contends that golf carts are off-road vehicles that are not required to be registered under West Virginia law. Therefore, underinsurance coverage is not required to be offered. Foremost asserts that the exclusion of the golf carts from underinsurance motorist coverage of the subject policy does not violate the intent and purpose of 33-6-31(b). The Court agrees.

In Boniey, the Supreme Court ruled that vehicles that are not required to be registered and licensed in West Virginia are also not required to have motorist liability insurance coverage pursuant to the proof of financial responsibility law of the motor vehicle safety responsibility law at West Virginia Code Section 17D-4-2. Although the vehicle at issue in Boniey was an ATV, and specifically exempt under 17A-3-2(a)(6), the Supreme Court's ruling was not limited to only ATVs. It specifically addressed all motor vehicles not required to be registered and licensed pursuant to West Virginia Code Section 17A-3-2.

Here we have golf carts. Although not specifically defined or described in the statutes, golf carts are not designed or intended for highway use – even less so than ATVs. Whether owned by a golf course or a private individual, golf carts are intended for easy access across private property.

7

In the Boniey case, the Supreme Court held that since ATVs are not required to be registered and licensed in West Virginia, ATVs are exempt from the financial responsibility requirements of 17D-4-2. Although the facts in Boniey are different from the instant case, the Supreme Court's analysis is pertinent and helpful.

Despite not having a statutory duty to offer liability coverage on the golf carts, Foremost chose to do so. Normally, an insurer issuing an automobile insurance policy in West Virginia is required to make a commercially reasonable offer of underinsurance motorist coverage as well. The key issue in this case is whether the subject insurance policy falls within the requirement where the insurer must make an offer of UIM coverage.

The Court FINDS that Plaintiffs' golf carts are not motor vehicles that are required to be registered and licensed in this State. Therefore, the subject golf carts are excepted from the mandatory security provisions in the Motor Vehicle Safety Responsibility Law, including the motor vehicle liability insurance coverage mandated by West Virginia Code 17D-4-2. Thus, there is no requirement that if liability coverage is offered on a vehicle not defined as a motor vehicle, that underinsured bodily injury coverage must also be offered.

Therefore, Foremost's Partial Motion to Dismiss is GRANTED.

## ORDER

WHEREFORE, it is ORDERED that the Court GRANTS Defendant, Foremost Insurance Company's Partial Motion to Dismiss as to all claims stemming from Foremost's denial of underinsured motorist benefits following the subject July 12, 2016, collision.

The Court designates this Order as being a final order as to this issue under W.Va. R. Civ.

8

Proc 54(b) and it is now appealable immediately.

The Court further directs the Clerk of the Circuit Court of Monongalia County to distribute certified copies of this order to the parties and/or counsel of record.

Enter ___April 24, 2017___

_(signature)_

Russell M. Clawges, Jr., Chief Judge
17th Judicial Circuit, Division II.

9