# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

Connor McLaughlin, administrator
of the Estate of Peter James McLaughlin,
Plaintiff Below, Petitioner

**FILED**

**May 11, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

vs)  No. 17-0453 (Berkeley County 15-C-682)

Christopher J. Murphy, M.D. and
University Healthcare Physicians, Inc.
d/b/a University Behavioral Medicine
and Psychiatry,
Defendants Below, Respondents

## MEMORANDUM DECISION

Petitioner Connor McLaughlin, administrator of the Estate of Peter James McLaughlin, by counsel Paul G. Taylor, appeals the April 17, 2017, order of the Circuit Court of Berkeley County denying petitioner's motion to alter or amend its February 3, 2017, order granting Respondent University Healthcare Physicians, Inc., d/b/a University Behavioral Medicine and Psychiatry's ("UHP") motion to dismiss. Petitioner also appeals the circuit court's April 17, 2017, order denying his motion to alter or amend its February 8, 2017, order granting Respondent Christopher J. Murphy, M.D.'s ("Dr. Murphy") motion to dismiss. Respondent UHP, by counsel David E. Schumacher and Daniel T. LeMasters, and Dr. Murphy, by counsel Chelsea V. Prince, filed their respective responses.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Peter James McLaughlin ("the decedent") was admitted as a patient at UHP on or about December 22, 2013, and Dr. Murphy was assigned as the attending provider. Dr. Murphy diagnosed the decedent with Bipolar I Disorder, suicidal ideation, cocaine abuse, and feigning illness. The decedent was prescribed Lamictal, but that medicine was directed not to be taken until December 29, 2013, and Dolophine was prescribed beginning on December 28, 2013. The decedent was directed to stop taking Oxymorphone, Tylenol, Motrin, and Aleve.

On the morning of December 28, 2013, the decedent submitted a formal request for discharge, so Dr. Murphy met with him. At that time, the decedent denied any suicidal, self-harm, or homicidal ideation, and according to Dr. Murphy showed no adverse signs of

1

responding to internal stimuli. Dr. Murphy determined that the decedent did not meet the criteria for involuntary commitment. Between 4:00 p.m. and 5:00 p.m. on December 28, 2013, the decedent was discharged from UHP. He then traveled on foot to at least two restaurants where employees reportedly observed him acting erratically, resulting in a call to police. However, the responding officers did not take the decedent into custody. Thereafter, the decedent continued traveling on foot outside of the city limits where he was struck by an automobile and killed in the roadway at approximately 11:06 p.m.

Petitioner "attempted to commence" the civil action before the circuit court by filing a complaint on December 22, 2015, alleging medical malpractice by respondents.[1] However, he did not provide a pre-suit notice required by West Virginia Code § 55-7B-6, to respondents prior to filing this suit. In the complaint, petitioner alleged that UHP was believed to be an independent contractor providing psychological and psychoanalytic services to patients at West Virginia University Medical Corp. d/b/a University Health Care; that respondent Dr. Murphy was employed as a physician at UHP; and that Murphy was assigned as the attending provider of medical services by UHP. The complaint also alleged that Dr. Murphy had a duty to determine whether the decedent was likely to cause serious harm to himself and was critical of decisions Dr. Murphy made regarding prescription medications for the decedent. Petitioner alleged that both UHP and Dr. Murphy failed to perform their duties owed to the decedent by discharging him, which proximately caused the decedent's death. Seven months after filing that complaint, petitioner provided a notice of claim on or about August 8, 2016, for this complaint. That notice of claim asserted that "[t]he Statement of The Theory or Theories of Liability upon which a cause of action may be based, will be specifically set forth in detail in a forthcoming screening certificate of merit." It also incorporated the "Notice of Medical Malpractice Claim filed on October 24, 2014," which was filed in the previously dismissed action. However, petitioner did not serve respondents with such screening certificate of merit or even a statement of intent to provide such certificate within sixty days of the notice of claim before filing the complaint to initiate the action. As of April 17, 2017, petitioner had not served a screening certificate of merit for this action.

UHP filed a motion to dismiss the underlying action. In petitioner's response to that motion, it attached what the circuit court characterized as "an alleged certificate of merit" as an exhibit. However, that certificate of merit was created and produced approximately eleven months after the filing of the complaint. On February 3, 2017, the circuit court granted UHP's

---

[1] Prior to the filing of the instant action below, a complaint was filed in Civil Action No. 14-C-845 by Michelle Lee McLaughlin, then-administratrix of the estate of Peter James McLaughlin. The Notice of Claim served on UHP in that action set forth that a screening certificate of merit would not be provided pursuant to the exemption found at West Virginia Code § 55-7B-6(c). Judge Yoder granted UHP's motion to dismiss that action for the failure to comply with the West Virginia Medical Professional Liability Act. Petitioner filed a motion under Rule 59(e) to alter or amend that opinion, but the circuit court denied that motion by order entered January 6, 2016. It is apparent from the orders in that matter that the circuit court acknowledged that petitioner became the administrator of the decedent's estate during the pendency of that matter, as petitioner appears on the style of the January 6, 2016, order.

motion to dismiss. Petitioner filed a motion to alter or amend that memorandum opinion, pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. By order entered April 17, 2017, the circuit court denied that motion.

In that order, the circuit court concluded that petitioner's complaint

falls squarely under the West Virginia Medical Professional Liability Act . . . and all of its requirements. . . These alleged breaches of duty [by respondents] relate to complex matters outside of the common knowledge of lay jurors as the Complaint is based upon the medical issues addressed and decisions reached by Dr. Murphy on medication provision, delayed provision, withdrawal symptoms, suicidal ideations, and involuntary committals.

It further determined that Dr. Murphy's decisions regarding the decedent's prescription medications and his determination that the decedent was not a threat to himself or others involved complex medical issues beyond the common knowledge or understanding of lay persons. The circuit court pointed out that despite petitioner's previously filed civil action being dismissed for failure to comply with the Medical Professional Liability Act ("MPLA") requirement to serve a screening certificate of merit, he still alleged that a screening certificate of merit is not needed in this action because the action "is based on well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care."

In that order, the circuit court also rejected petitioner's contention that the "common knowledge doctrine" applied. It found that the three-factor test promulgated in *Wilhelm v. State Traffic Safety Comm.*, 185 A.2d 715 (Md. 1962), and applied in *Galloway v. Horne Concrete Construction*, 524 Fed.Appx. 865 (4th Cir. 2013), was inapplicable as an improper attempt to establish that the medical issues and decisions at issue here are not "complex medical issues." Thereafter, it concluded that petitioner's complaint involves a "complex medical issue" requiring expert medical testimony. The circuit court specifically held that because petitioner's complaint

falls squarely under the West Virginia Medical Professional Liability Act and involves a "complex medical issue" for which expert testimony is required, a pre-suit screening certificate was required in this matter in order to comply with the MPLA and its statutory purposes. . . Under these facts, there is no basis to extend or toll the Statute of Limitations.

The circuit court also stated that its order dismissing the prior civil action instructed petitioner that a screening certificate of merit was necessary for the allegations within that complaint and noted that the complaint in the instant matter is identical to the prior case. Thus, it concluded that petitioner's failure to comply with the MPLA's pre-suit requirements deprived the circuit court of subject matter jurisdiction over petitioner's underlying claims and that subject matter jurisdiction could not be waived.

In addition, Dr. Murphy filed a motion to dismiss on October 18, 2016, citing the absence of subject matter jurisdiction over petitioner's claim. On February 7, 2017, the court granted Dr.

3

Murphy's motion and dismissed petitioner's case against him with prejudice. In that order, the circuit court cited petitioner's failure to provide a screening certificate of merit prior to filing his complaint and concluded that collateral estoppel precluded him from re-litigating this issue. On February 17, 2017, petitioner filed a motion to alter or amend that February 3, 2017, dismissal order. By order entered on April 17, 2017, the circuit court denied that motion, noting that in refiling his complaint in the second action petitioner or his counsel "knowingly and intentionally disregarded the clear language of the prior *Memorandum Opinion and Order* as well as the language of W.Va. Code § 55-7B-6(a)-(b)." It also found that petitioner waited nearly one year after refiling his complaint to produce a screening certificate of merit. Petitioner appeals from the denial of both of his motions to alter or amend the orders dismissing his action against both respondents.

This Court has previously set forth the following standards of review:

> "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. American Travellers Life Ins. Co.,* 204 W.Va. 430, 513 S.E.2d 657 (1998).

Syl. Pt. 1, *Affiliated Const. Trades Foundation v. University of West Virginia Bd. of Trustees*, 210 W. Va. 456, 557 S.E.2d 863 (2001).

> Dismissal for failure to state a claim is proper "where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Murphy v. Smallridge,* 196 W.Va. 35, 37, 468 S.E.2d 167, 168 (1996). This Court has also held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995).

*Mey v. Pep Boys-Manny, Moe & Jack*, 228 W. Va. 48, 52, 717 S.E.2d 235, 239 (2011).

The majority of petitioner's claimed errors stem from his failure to timely file a screening certificate of merit as required by West Virginia Code § 55-7B-6(b). That statute provides as follows:

> At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia Rules of Evidence and shall state with particularity: (1)

4

The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of Rule 15 of the Rules of Civil Procedure.

Part of the basis for petitioner's failure to file the screening certificate of merit is his reported belief that this matter falls under the exception set forth in West Virginia Code § 55-7B-6(c):

Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

Specifically, petitioner asserts that the circuit court erred by concluding that he failed to comply with West Virginia Code § 55-7B-6(b) by holding that a screening certificate of merit is necessary when no such certificate is required under these facts; by holding that the civil action involved a "complex medical issue;" by refusing to consider the certificate of merit even though petitioner filed such certificate in accordance with West Virginia Code § 55-7B-6; by refusing to find that the issues of negligence by the hospital were non-medical, administrative, and ministerial in nature; and by finding that the twenty-month delay in filing a certificate was untimely notwithstanding the circumstances and obstruction of discovery by respondents.

Petitioner points to the fact that he filed a notice of his theories of liability at the outset of the litigation with service on respondents. He argues that the following negligence claims fit that criteria: 1) failing to discharge the decedent by retrieving the hospital gown, assuring that the decedent had clothing in lieu of the gown, ensuring that it was not getting dark, ensuring that he had some means of subsistence such as money for a taxi or a phone call, and ensuring that he had his prescription medications with him; 2) failing to discharge the decedent without removal of the hospital gown; 3) failing to discharge the decedent by some orderly protocol regarding transportation; 4) discharging the decedent without any inquiry by hospital staff as to how the decedent was to get home; 5) discharging the decedent without a hospital employee noticing or inquiring as to where he proposed to go considering the hazards he might encounter and where he was going; and 6) discharging the decedent with the knowledge that he "was afflicted by a degree of mental instability (confirmed by restaurant employees) requiring [respondent Dr.] Murphy to caution the hospital staff of the requirements in (1) to (4) above." In addition, citing only dictionary definitions of the word "complex" in support, petitioner argues that the fact the decedent was treated, released, and exited the hospital involves no complex aspects. Further, without citing to any specific portion of the record, he contends that even the decedent's

treatment by Dr. Murphy was routine.

Petitioner further asserts that while a screening certificate of merit was not necessary, he engaged an expert witness and provided the screening certificate of merit. That certificate was signed by Melvyn M. Ninzy, M.D., on October 27, 2016, and includes a report dated October 24, 2016. In that report, Dr. Nizny opined

> with a reasonable degree of psychiatric certainty . . . that the acceptance of a said, [sic] request for discharge by a psychiatric patient with sudden onset, and subsequent discharge, violated the standard of care and violated the need for involuntary hospitalization as there is good reason to believe that Mr. McLaughlin did meet criteria for involuntary hospitalization per W VA code [sic] 27-5-4(j) given both mental illness and being addicted.

Based on all of the work involved related to the expert, petitioner argues that the twenty-month delay was not unreasonable and that respondents were not prejudiced by that delay, particularly since they obstructed petitioner's efforts to conduct discovery.

As we have previously recognized,

> [u]nder *W.Va. Code,* 55–7B–6 [2003] the purposes of requiring a pre-suit notice of claim and screening certificate of merit are (1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims. The requirement of a pre-suit notice of claim and screening certificate of merit is not intended to restrict or deny citizens' access to the courts.

Syl. Pt. 2, *Hinchman v. Gillette*, 217 W. Va. 378, 618 S.E.2d 387 (2005). Petitioner filed his complaint on or about December 23, 2014, in Civil Action No. 14-C-845 in the Circuit Court of Berkeley County. UHP promptly submitted its motion to dismiss, which was granted by order entered April 13, 2015. Petitioner then filed a motion to alter or amend the dismissal order, pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. That motion was denied by order entered January 6, 2016. In those orders, the circuit court made it abundantly clear that petitioner's claims fell within the purview of the MPLA so a screening certificate of merit was required due to the complex medical issues and decisions at the center of the case.

While its motion to alter or amend in the earlier case was still being considered, petitioner filed the complaint in Civil Action No. 15-C-682 on December 22, 2015, also before the Circuit Court of Berkeley County. That complaint stemmed from the same set of events as those alleged in 14-C-845, but petitioner again chose not to present a screening certificate of merit. Instead, he submitted a notice of theories of liability eight months after filing the action. As a result, respondents filed their respective motions to dismiss, which were granted by the circuit court.

In petitioner's complaint in 15-C-682, he specifically alleges the following:

[The decedent] was directed to stop taking Oxymorphone (an opioid agonist); a result of which a severe withdrawal syndrome could have occurred. The failure to take the prescribed Lamictal and the Dolophine, and the withdrawal of Oxymorphone, separately or together, could have precipitated [the decedent's] erratic and suicidal behavior. . . The negligent and untimely prescription of drugs probably precipitated the erratic behavior or seizure of [the decedent] resulting in his death. . . From the diagnosis . . . [the decedent] was likely to cause serious harm presenting a danger to himself as defined by West Virginia Code § 27-1-12(a)(3) and West Virginia Code § 27-1-12(a)(4). Given the above diagnosis, Dr. Murphy had a duty, under the provisions of West Virginia Code § 27-1-12(b) to make a determination whether [the decedent] was "likely to cause serious harm" to himself. Murphy was required to utilize all available information, including [1] psycho social, [2] medical, [3] hospitalization, [4] psychiatric information including the circumstances of any previous [5] commitments [sic] or [6] convalescent or [7] conditional releases that are relevant to the current situation, in addition to the individual's [8] current overt behavior. . . A hospital owes to its patients [and here its subcontractors] such reasonable care and attention for their safety as their mental and physical condition, if known, may require. The care to be exercised should be commensurate with the <u>known inability of the patient to take care of himself</u> . . . [Dr.] Murphy was grossly negligent in that he failed to perform a duty owed to [the decedent] by improperly discharging [the decedent] from the hospital when he was clearly a danger to himself. [Dr.] Murphy failed to apply reasonable care for [the decedent's] safety. [Dr.] Murphy failed to make the determination required by West Virginia Code § 27-1-12(b). . . [Dr.] Murphy's negligence proximately caused the death of [the decedent]. . . ."

[underscore in original]. In numbered paragraphs twenty-four and twenty-five of the complaint, petitioner contends that a screening certificate of merit is not needed because the cause of action is based on a well-established legal theory of liability that does not require expert testimony and that the body of the complaint sets forth the basis of the alleged liability of the health care provider in lieu of such certificate.

We have previously noted that

[i]n medical malpractice cases where lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience, failure to present expert testimony on the accepted standard of care and degree of skill under such circumstances is not fatal to a plaintiff's *prima facie* showing of negligence. . . . The common knowledge exception merely allows, in rare cases, the submission of the case to the jury without expert testimony.

*Totten v. Adongay*, 175 W. Va. 634, 638-39, 337 S.E.2d 2, 7 (1985). In considering petitioner's arguments, we are also mindful of our decision in *Gray v. Mena*, 218 W. Va. 564, 570, 625 S.E.2d 326, 332 (2005), wherein we stated that

7

in the present case, while the Appellant characterizes the event as not affiliated in any manner with the provision of medical services, the defendant, should this case proceed to trial, would most certainly argue that his actions were necessary to a complete diagnosis and investigation of the complaints presented to him by the Appellant. The resolution of this matter of whether the allegedly offensive action occurred within the context of rendering medical services is exceedingly fact-driven. We caution all litigants preparing a complaint in such matters to be diligent in adhering to the requirements of the Medical Professional Liability Act where the healthcare provider's action could possibly be construed as having occurred within the context of the rendering of health care services.

Unlike the facts in *Gray*, petitioner argued that the claim fell under the exception to the requirement for the screening certificate of merit. This was in spite of the circuit court's finding that dismissal was proper due to the lack of the screening certificate of merit in the earlier case. In the instant matter, based on the language of petitioner's complaint, we find that the circuit court did not err in determining that because petitioner's allegations involved complex medical issues a screening certificate of merit was required to be timely filed pursuant to West Virginia Code § 55-7B-6. Petitioner had ample time to file that certificate during the pendency of the first complaint and prior to filing the second complaint. However, he chose to wait until approximately twenty months after the filing of the first complaint to finally present the circuit court with that certificate. Further, when the circuit court was considering the motions to dismiss, at no point did petitioner present argument or evidence, as he does here, that he experienced any difficulties in securing the decedent's medical records or an expert review of those records.

In addition, petitioner argues that the circuit court erred by basing dismissal on collateral estoppel. Petitioner's argument on this point is a single sentence that does not cite any statute, rule of law, or legal precedent. He simply states that "[t]he issue of collateral estoppel is not applicable since the prior civil action was dismissed without prejudice, and the prerequisites of collateral the estoppel doctrine are not met." West Virginia Rule of Appellate Procedure 10(c)(7) requires that briefs "contain an argument exhibiting clearly the points of fact and law presented . . . and citing the authorities relied on, under headings that correspond with the assignments of error." Petitioner failed to do so. Instead, this Court had to look to his brief below to determine the basis for that contention.

In its order granting UHP's motion to dismiss, the circuit court does not address collateral estoppel as a basis for granting that motion, and the memorandum of law petitioner cites in this argument relates only to the circuit court's order granting Dr. Murphy's motion to dismiss. In denying petitioner's motion to alter or amend the order dismissing his claims against Dr. Murphy, the circuit court specifically stated that it "does not find persuasive [petitioner's] continued argument that a Screening Certificate of Merit is not needed in this action . . ." based on the theories of "common knowledge" or that "the cause of action is based on a well-established legal theory of liability" that does not require expert testimony. The circuit court, alternatively, found that because the Circuit Court of Berkeley County determined in the earlier suit that petitioner must file a screening certificate of merit but failed to do so, the complaint in the instant matter must be dismissed due to collateral estoppel. However, because we affirm the circuit court's dismissal on other grounds and petitioner presents only a skeletal, single-sentence

argument on this assignment of error, we decline to address the propriety of this alternate ground for dismissal.

For these reasons, we find no error in the circuit court's denial of petitioner's Rule 59(e) motions in the underlying action.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:**  May 11, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II


**DISQUALIFIED:**

Justice Elizabeth D. Walker