717 S.E.2d 235

Diana MEY, Plaintiff below, Petitioner

v.

The PEP BOYS–MANNY, MOE & JACK, Southwest Vehicle Management, Inc., and Lanelogic, Inc. d/b/a Caroffer.com, Defendants below, Respondents.

No. 101406.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 20, 2011.

Decided Sept. 29, 2011.

50

John W. Barrett, Esq., Jonathan R. Marshall, Esq., Bailey & Glasser, LLP, Charleston, WV, Matthew P. McCue, Esq., Pro Hac Vice, Natick, ME, for Petitioner.

Keith J. George, Esq., Jeffrey A. Kimble, Esq., John J. Meadows, Esq., Robinson & McElwee, PLLC, Clarksburg, WV, Michael Mallow, Esq., Laura A. Wytsma, Esq., Aurele A. Danoff, Esq., Pro Hac Vice, Loeb & Loeb, LLP Los Angeles, California, for Respondents, The Pep Boys–Manny, Moe and Jack.

J.H. Mahaney, Esq., Charles F. Bellomy, Esq., Huddleston Bolen, LLP, Huntington, West Virginia, for Respondents, Southwest Vehicle Management, Inc. and Lanelogic, Inc., d/b/a Caroffer.com.

KETCHUM, J.:

The plaintiff below, Diana Mey ("plaintiff"), appeals an order from the Circuit Court of Ohio County, granting the defendants' motion to dismiss pursuant to Rule 12(b)(6) of the *West Virginia Rules of Civil Procedure.* The plaintiff filed a class action complaint alleging that the defendants, The Pep Boys, Southwest Vehicle Management, Inc., and Lanelogic Inc. ("defendants"), violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.,* by leaving an automated voicemail message at her residence in response to a classified advertisement that the plaintiff's son placed on the internet website craigslist.com. The plaintiff's son was selling a used car and his internet advertisement invited third parties to contact him at the plaintiff's home telephone number. The circuit court ruled that the automated call placed in response to this advertisement did not violate the TCPA and granted the defendants' motion to dismiss. Following this ruling, the plaintiff filed a motion for relief pursuant to Rules 59(e) and 60(b) of the *West Virginia Rules of Civil Procedure,* which the circuit court denied.

In this appeal, the plaintiff argues that the circuit court erred by (1) failing to apply the correct standard of review when assessing a Rule 12(b)(6) motion to dismiss; (2) ruling that the automated call was not a "telephone solicitation" and did not contain an "unsolicited advertisement" as those terms are defined by the TCPA; (3) failing to grant the plaintiff's motion for relief pursuant to Rules 59(e) and 60(b) of the *West Virginia Rules of Civil Procedure* after being informed that the Federal Communication Commission ("FCC") issued a citation against the defendants; and (4) finding that the plaintiff provided her "prior express consent" to be contacted.

After thorough consideration of the briefs, the record submitted on appeal, and the oral arguments of the parties, we affirm the circuit court's orders granting the defendants' Rule 12(b)(6) motion to dismiss and denying the plaintiff's motion for relief pursuant to Rules 59(e) and 60(b) of the *West Virginia Rules of Civil Procedure.*

## I.   Facts & Procedural Background

In early June 2008, the plaintiff's son, who lived with his mother, listed a used car for sale on the website craigslist.com and provided their home telephone number that interested third parties could use to contact him. On June 12, 2008, the plaintiff received an automated [1] telephone call stating:

> Hello. I'm calling you about the vehicle you have listed for sale. At Caroffer.com we're willing to give you a cash offer right now. All you have to do is go to Caroffer.com, tell us about your vehicle and we'll give you an offer in minutes. One of our buyers will return an offer that we are willing to take for your vehicle. If you accept the offer, simply drop off your car at the nearest participating Pep Boys to pick up your check. It's that easy at Caroffer.com. There are no hassles, no fees, and no salesmen trying to sell you another car. It's that easy and you get your check immediately. www.Caroffer.com. Give us a try. You'll be glad you did.

After receiving this message, the plaintiff filed a class action complaint against three defendants, The Pep Boys, Lanelogic Inc., and Southwest Vehicle Management Inc., who allegedly entered into a partnership to purchase used cars. The plaintiff sought damages and an injunction under the TCPA, 47 U.S.C. § 227, to redress the alleged harm caused by the automated message left on her answering machine.

The TCPA is a federal statute that broadly regulates the use of automated telephone equipment. The statute prohibits certain unsolicited advertising calls, restricts the use of automatic dialers, and delegates rulemaking authority to the FCC. The TCPA provides for injunctive relief and statutory damages in the amount of $500 per violation. 47 U.S.C. § 227(b)(3).

In response to the plaintiff's complaint, the defendants filed a motion to dismiss, arguing that there was no violation of the TCPA because the automated message was left in response to an advertisement placed on the Internet by the plaintiff's son that invited third parties to make inquiries about buying the used car.

The circuit court agreed with the defendants and granted their motion to dismiss by order entered on January 15, 2010. The circuit court concluded that "the message does not constitute an unsolicited advertisement subject to TCPA enforcement because the person posting the classified [ad] is expressly inviting a call using the number in the classified ad . . . The facts alleged in this case are the antitheses of the definition of 'unsolicited' because Plaintiff's son requested unknown third parties interested in buying his car to contact him at Plaintiff's number."

On February 1, 2010, the plaintiff filed a motion for relief from the judgment pursuant to Rules 59(e) and 60(b) of the *West Virginia Rules of Civil Procedure.* The plaintiff argued that documents the defendants provided to her "shortly before" the motion to dismiss hearing demonstrated that the automated message at issue "was intended not only to lead to the sale of a car to the Defendants, but also to sell $99 inspection service-fees, 'up-sell' auto repairs, and 'entice' customers to pay to 'recondition' the cars they intended to sell."

---

1. These calls are also referred to as "robocalls"    and "prerecorded" calls.

The plaintiff filed a supplemental memorandum to this motion on April 30, 2010, notifying the circuit court that the FCC issued a citation against defendant Pep Boys on March 15, 2010, relating to the automated message at issue. In response, the defendants argued that the plaintiff failed to raise any new facts that warranted relief under Rules 59(e) or 60(b). The defendants stated that the plaintiff had the documents relating to the inspection fees and auto repairs before the hearing on the motion to dismiss and that this issue was raised and argued before the circuit court during that hearing. The defendants argued that the FCC citation was based on a consumer complaint the plaintiffs filed with the FCC twelve days after the circuit court granted the defendants' motion to dismiss. The defendants also stated that the citation was not an actual adjudication of wrongdoing, rather it was "merely a complaint or 'charge' consisting of allegations, not a decision of liability or a determination on the merits."

The circuit court agreed with the defendants and denied the plaintiff's Rule 59(e) and 60(b) motion for relief from judgment, stating:

> Plaintiff's Motion for Relief essentially reargues the points and facts that were already presented in her opposition to Defendants' Motion to Dismiss and fails to identify new facts, new law or new arguments that would justify a reconsideration of the Court's prior ruling let alone a reversal of the Court's ruling.

Following the circuit court's denial of her motion for relief, the plaintiff filed the present appeal.

## II. Standard of Review

■ On appeal to this Court, the plaintiff contests two rulings made by the circuit court. Generally, when reviewing a circuit court's decision, we apply a three-part standard of review:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syllabus Point 2, *Walker v. West Virginia Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). As the various errors raised by the plaintiff concern different principles of law, multiple standards of review apply to our consideration of those issues. Therefore the specific standards of review will be applied below in our discussion of the plaintiff's arguments.

## III. Analysis

### A. Standard for Consideration of a Rule 12(b)(6) Motion to Dismiss

■ The plaintiff's first assignment of error is that the circuit court erred in its application of the standard for consideration of a motion to dismiss. This Court has explained that "[t]he purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the complaint." *Collia v. McJunkin*, 178 W.Va. 158, 159, 358 S.E.2d 242, 243 (1987) (citations omitted). "The trial court, in appraising the sufficiency of a complaint on a Rule 12(b)(6) motion, should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)." Syllabus Point 3, *Chapman v. Kane Transfer Co. Inc.*, 160 W.Va. 530, 236 S.E.2d 207 (1977). "Dismissal for failure to state a claim is proper 'where it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Murphy v. Smallridge*, 196 W.Va. 35, 37, 468 S.E.2d 167, 168 (1996). This Court has also held that "[a]ppellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syllabus Point 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995).

The circuit court's order granting the motion to dismiss states that it accepted all of the plaintiff's allegations as true "as the court must when considering a motion to dismiss for failure to state a claim upon which relief could be granted[.]" The order

also includes a three paragraph recitation of the standard of review applicable to a Rule 12(b)(6) motion to dismiss. The circuit court's order recites the undisputed factual allegations in the complaint: the plaintiff's son advertised a used car for sale on the internet and received an automated call from the defendants inquiring about buying the car. There is no factual dispute regarding the text of the automated call. The plaintiff also alleged that this automated call was made without her prior express consent and that no one in the plaintiff's household had a prior business relationship with any of the defendants. The circuit court accepted these allegations as true and determined that they failed to state a claim as a matter of law under the TCPA. Because the circuit court accepted the factual allegations contained in the complaint as true, we find no error with the standard of review the court applied to the motion to dismiss.

## B. Circuit Court's Analysis of the TCPA

■ The plaintiff next argues that the circuit court erred in its determination that the automated call was not a "telephone solicitation" and did not contain an "unsolicited advertisement" as those terms are defined by the TCPA. Congress enacted the TCPA to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls . . . and to facilitate interstate commerce by restricting certain uses of facsimile (fax) machines and automatic dialers." S.Rep. No. 102–178, at 1 (1991), 1991 U.S.C.C.A.N. 1968, 1968. The legislation was intended to address the "growing number of telephone marketing calls and certain telemarketing practices thought to be an invasion of consumer privacy[.]"[2] According to the TCPA, "[i]t shall be unlawful for any person within the United States . . . to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is

initiated for emergency purposes or is exempted by rule or order by the Commission[3] under paragraph 2(B)[.]" 47 U.S.C. § 227(b)(1)(B). The exemptions in paragraph 2(B) include:

> (i) calls that are not made for a commercial purpose; and

> (ii) such classes or categories of calls made for commercial purposes as the Commission determines—

>> (I) will not adversely affect the privacy rights that this section is intended to protect; and

>> (II) do not include the transmission of any unsolicited advertisement.

47 U.S.C. § 227(b)(2)(B).

With that background in mind, we turn to the circuit court's ruling that the automated call at issue did not contain an "unsolicited advertisement." "Unsolicited advertisement" is defined as follows:

> The term unsolicited advertisement means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior or express invitation or permission, in writing or otherwise.

47 C.F.R. § 64.1200(f)(13).

The plaintiff argues that the automated message was not an offer to purchase the car, rather it "was a solicitation seeking to entice the plaintiff into a marketing scheme intended to generate inspection and car repairs." According to the plaintiff's complaint, the automated message stated "tell us about your vehicle and we'll give you an offer[.]" The circuit court concluded that "when an individual responds to a classified ad, and conveys interest in purchasing the product offered in the classified ad, then such a response does not constitute an unsolicited advertisement[.]" The legislative history of the TCPA supports the circuit court's interpretation, and says that, "persons who knowingly release their phone numbers have in

---

**2.** *Federal Communications Commission Report and Order In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, at 4–5.

**3.** The TCPA directed the FCC to prescribe regulations to implement "methods and procedures for protecting the privacy rights (described in the TCPA) . . . in an efficient, effective, and economic manner[.]" 47 U.S.C. § 227(c)(2).

effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Hovila v. Tween Brands, Inc.*, 2010 WL 1433417 (W.D.Wash.2010) citing H.R.Rep. No. 102–317, at 13 (1991). The classified advertisement did not contain any limiting instructions on how a third party was to contact the plaintiff's son. By posting the advertisement and telephone number on the internet, the plaintiff's son expressly invited[4] third parties, including the defendants, to make inquiries about the car. We therefore agree with the circuit court's conclusion that the automated call was not an unsolicited advertisement, rather, it was a call made in direct response to an advertisement by the plaintiff's son inviting third parties to respond.

The circuit court also concluded that the automated call was not a "telephone solicitation." After passage of the TCPA, the FCC adopted regulations providing that no person or entity may initiate an automated call without the prior express consent of the called party, unless the call "is made for a commercial purpose but does not include or introduce an unsolicited advertisement or constitute a telephone solicitation[.]" 47 C.F.R. § 64.1200(a)(2)(iii). "Telephone solicitation" is defined as:

[T]he initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or the investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message:

(i) To any person with that person's prior express invitation or permission;

(ii) To any person with whom the caller has an established business relationship; or

4. We will expand our discussion of "express invitation or permission" in Section III.C.

5. The plaintiff also argues that the TCPA places more restrictions on automated calls than on calls placed by live persons. The FCC's regulations state that "it is legitimate and consistent with the Constitution to impose greater restrictions on automated calls than on calls placed by live persons," because automated calls "are more of a nuisance and a greater invasion of privacy[.]" *In the Matter of the Telephone Con-*

(iii) By or on behalf of a tax-exempt non-profit organization.

47 C.F.R. § 64.1200(f)(12).

The FCC's regulations provide guidance on whether a response to a classified advertisement can be considered a "telephone solicitation." In the FCC's final rules and regulations implementing the TCPA, the FCC stated that a call by a real estate agent, representing a potential buyer, to a party who advertised their property for sale, would not constitute a telephone solicitation, "so long as the purpose of the call is to discuss a potential sale of the property to the represented buyer." *Rules and Regulations Implementing the Telephone Consumer Act of 1991*, 70 FR 19330–01 (2005). The FCC goes on to state that "[a] caller responding to a classified ad would not be making a telephone solicitation, provided the purpose of the call was to inquire about or offer to purchase the product or service advertised, rather than to encourage the advertiser to purchase, rent, or invest in property, goods or services." *Id.*

According to these regulations, the defendants' call in response to the classified advertisement was not a telephone solicitation as long as the purpose of the call was to inquire about the used car the plaintiff's son advertised. The plaintiff argues that the purpose of the call was not only to inquire about the car, it was also to entice the plaintiff to participate in a marketing scheme designed to generate fees from automobile inspections and repairs. The plaintiff states that no offer was made during the call, and she (or her son) would have had to follow a series of steps, including getting the car inspected at Pep Boys, before an offer would have been made.[5]

*sumer Protection Act of 1991*, 7 F.C.C.R. 2736, (1992). While these regulations call for greater restrictions on automated calls, the main inquiry remains whether the purpose of the call was to inquire about the product offered in the classified advertisement or was to encourage the advertiser to purchase, rent, or invest in property, goods or services. Neither the TCPA, nor the FCC regulations, state that an automated call inquiring about a product offered in a classified advertisement constitutes a violation of the statute.

The defendants state that the language used in the automated call and the allegations in the plaintiff's complaint demonstrate that the purpose of the call was to inquire about the used car for sale. The automated call stated, "I'm calling you about the vehicle you have listed for sale ... we're willing to give you a cash offer right now." Based on this statement and the allegations contained in the plaintiff's complaint, the circuit court determined the telephone call was "initiated for the purpose of communicating defendants' interest in extending a bona fide offer to engage in negotiations that might culminate in a bona fide offer for the car plaintiff's son advertised[.]"

We agree with the circuit court's analysis. This case is analogous to the example provided in the FCC's regulations. In that example, a real estate agent is permitted to call a seller who advertises real estate for sale. An offer would not be expected to be forthcoming during this initial telephone call, rather, the real estate agent would gather information about the property and possibly arrange to have the property inspected. In the present case, the automated call requested more information about the car so that an offer could be made. The FCC regulations do not require a party responding to a classified advertisement to make an offer during the initial call. It would be unusual for a party responding to a classified advertisement for real estate or a used car to make an offer without first conducting an inspection. In the FCC's example, the real estate agent could receive a commission if the sale is consummated. Similarly, the defendants in the present case could have received a fee for inspecting the car. These fees do not change the purpose of the initial call in either the FCC's hypothetical real estate example or in the present case: the purpose was to inquire about the item advertised for sale.

■ We hold that under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, a caller responding to a classified advertisement is not making a "telephone solicitation" in violation of the Act, provided the purpose of the call is to inquire about or offer to purchase the product or service advertised, rather than to encourage the advertiser to purchase, rent, or invest in property, goods or services. In the present case, we agree with the circuit court that the defendants were not making a telephone solicitation because they were responding to a classified advertisement from the plaintiff's son for the purpose of gathering information about the item he was advertising for sale.

### C. Express Consent

■ The plaintiff's next argument is that the automated message violates the TCPA because she did not expressly consent to receive it. According to the TCPA, "[i]t shall be unlawful for any person within the United States ... to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is *exempted by rule or order* by the Commission under paragraph 2(B)[.]" 47 U.S.C. § 227(b)(1)(B). (Emphasis added). The exemptions set forth in paragraph 2(B)[6] include commercial calls that do not contain the transmission of any unsolicited advertisement. The TCPA's definition of "unsolicited advertisement" states that there is no TCPA violation if an automated message is sent after a party provides her "prior express invitation or permission" to receive such information.[7] In other words, the TCPA and the FCC regulations state that when an individual provides a "prior express invitation" to be contacted, a third party receiving this invitation is not required to obtain the individual's "prior express consent" before contacting the individual.

The plaintiff's son placed the plaintiff's telephone number on the internet and invited third parties to contact him. After receiving this invitation from the plaintiff, the defendants placed an automated telephone call to the number provided and expressed an inter-

---

6. See Section III.B. *supra.*

7. *Black's Law Dictionary* defines "invitation to negotiate," as:

A solicitation for one or more offers, usually as a preliminary step to forming a contract. *See Black's Law Dictionary* 904 (9th ed.2009).

est in purchasing the car. The legislative history of the TCPA states that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *Hovila v. Tween Brands, Inc.*, 2010 WL 1433417 (W.D.Wash.2010) citing H.R.Rep. No. 102–317, at 13 (1991). Based on this legislative history, as well as the plain language of the TCPA and FCC regulations, we agree with the circuit court's conclusion that because the plaintiff's son provided third parties with an express invitation to contact him, the defendants were not required to obtain the plaintiff's "prior express consent" before responding to the classified advertisement.

## D. FCC Citation

■■■■ After the circuit court dismissed the complaint, the plaintiff filed a motion for relief pursuant to Rules 59(e) and 60(b) of the *West Virginia Rules of Civil Procedure* after being informed that the FCC issued a citation against Pep Boys. "Rule 59(e) of the *West Virginia Rules of Civil Procedure*[8] provides the procedure for a party who seeks to change or revise a judgment entered as a result of a motion to dismiss or a motion for summary judgment." Syllabus Point 4, *James M.B. v. Carolyn M.*, 193 W.Va. 289, 456 S.E.2d 16 (1995). When reviewing a circuit court's order concerning a Rule 59(e) motion, we typically apply the standard of review applicable to the underlying judgment that the motion seeks to alter or amend. In Syllabus Point 1 of *Wickland v. American Travellers Life Ins. Co.*, 204 W.Va. 430, 513 S.E.2d 657 (1998), we stated:

> The standard of review applicable to an appeal from a motion to alter or amend a judgment made pursuant to *W.Va.R.Civ.P.* 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed.

The underlying judgment the plaintiff's Rule 59(e) motion addresses is the circuit court's

order granting the defendant's motion to dismiss. We therefore apply a *de novo* standard of review, the same standard applicable to a motion to dismiss.

■■■■ A Rule 59(e) motion may be used to correct manifest errors of law or fact, or to present newly discovered evidence. *See In re Transtexas Gas Corp.*, 303 F.3d 571 (5th Cir.2002). A motion under Rule 59(e) is not appropriate for presenting new legal arguments, factual contentions, or claims that could have previously been argued. *See Freeman v. Busch*, 349 F.3d 582 (8th Cir. 2003) ("Arguments and evidence which could, and should, have been raised at an earlier time in the proceedings cannot be presented in a Rule 59(e) motion."); *Holland v. Big River Minerals Corp.*, 181 F.3d 597, 605–606 (4th Cir.1999) (issue presented for first time in Rule 59(e) motion is not timely raised); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998) (Rule 59(e) motion cannot raise arguments that were not raised prior to judgment); *Santiago v. Canon U.S.A., Inc.*, 138 F.3d 1, 3–4 (1st Cir.1998) (new legal theory as to liability may not be raised in motion for reconsideration); *Stone v. Wall*, 135 F.3d 1438, 1441–1442 (11th Cir.1998) (argument that law of other jurisdiction should have applied could not be raised in Rule 59(e) motion); *Global Network Techs., Inc. v. Regional Airport Auth.*, 122 F.3d 661, 665–666 (8th Cir.1997) (evidence that could have been introduced prior to judgment may not be offered through Rule 59(e) motion).

■■■■ While Rule 59(e) does not itself provide a standard under which a circuit court may grant a motion to alter or amend, other courts and commentators have set forth the grounds for amending earlier judgments. For instance, the *Litigation Handbook on West Virginia Rules of Civil Procedure* states that a Rule 59(e) motion should be granted where: "(1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; (3) it becomes necessary to remedy a

---

**8.** Rule 59(e) of the West Virginia Rules of Civil Procedure states:

*Motion to alter or amend a judgment.*—Any motion to alter or amend the judgment shall be filed not later than 10 days after entry of the judgment.

clear error of law or (4) to prevent obvious injustice." Franklin D. Cleckley, Robin J. Davis, & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure*, § 59(e) at 1178–1179 (3d. Ed.2008).[9] Under Rule 59(e), a party who relies on newly discovered evidence "must produce a legitimate justification for not presenting the evidence during the earlier proceeding." *Small v. Hunt*, 98 F.3d 789, 798 (4th Cir.1996). Under Rule 59(e), the reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly. *See Palmer v. Champion Mortgage*, 465 F.3d 24, 29 (1st Cir.2006); *Templet v. HydroChem Inc.*, 367 F.3d 473, 479 (5th Cir.2004); *Pacific Ins. Co. v. Amer. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). *See also* 11 *Wright et. al., Federal Practice and Procedure* § 2810.1 (3d ed.2010).[10]

▮▮▮▮ The plaintiff also requested relief under Rule 60(b) of the *West Virginia Rules of Civil Procedure*, which provides, in relevant part:

> On motion and upon such terms as are just, the court may relieve a party ... from final judgment order or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect or unavoidable cause; (2) newly discovered evidence ...; (3) fraud ...; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged ...; or (6) any other reason justifying relief from the operation of the judgment.

This Court accords broad discretion to a circuit court deciding a Rule 60(b) motion.

"A motion to vacate a judgment made pursuant to Rule 60(b), *W.Va. R.C.P.*, is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion." Syllabus Point 5, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974).

The plaintiff argues that the circuit court erred by failing to grant her motion for relief after being informed that the FCC issued a citation against Pep Boys. The plaintiff filed a consumer complaint with the FCC twelve days after the circuit court granted the defendants' motion to dismiss. The citation the FCC sent to the defendants states, "[t]he complaints (attached to the citation) address *alleged TCPA violation(s)* [.]" (Emphasis added.) The FCC citation was based on the plaintiff's consumer complaint. The defendants did not respond to the complaint before receiving the citation and argue that it is "merely a complaint or 'charge' consisting of allegations, not a decision of liability or a determination on the merits."

The plaintiff argues that this citation is the FCC's interpretation of its own regulations and is therefore entitled to considerable weight and deference. In Syllabus Point 4 of *Security Nat. Bank & Trust Company v. First W.Va. Bancorp., Inc.*, 166 W.Va. 775, 277 S.E.2d 613 (1981), we held, "[i]nterpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous." The problem with the plaintiff's argument is that the citation is a form document that does not detail what, if any, investigation the FCC undertook prior to issuing it. This form document was issued

---

**9.** *See also Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.1993) ("Three grounds for amending an earlier judgment pursuant to Rule 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.").

**10.** Rule 59(e) of the *West Virginia Rules of Civil Procedure* differs from Rule 59(e) of the *Federal Rules of Civil Procedure* in only one respect: the Federal Rule requires a motion to alter to be filed no later than 28 days after judgment is entered whereas the West Virginia rule requires the motion to be filed no later than 10 days after judgment is entered. Justice Cleckley commented on this 10 day time limit in *Powderidge*

*Unit Owners Association v. Highland Properties, Ltd.*, 196 W.Va. 692, 704, 474 S.E.2d 872, 884 (1996), stating:

> When a party filing a motion for reconsideration does not indicate under which West Virginia Rule of Civil Procedure it is filing the motion, the motion will be considered to be either a Rule 59(e) motion to alter or amend a judgment or a Rule 60(b) motion for relief from a judgment order. If the motion is filed within ten days of the circuit court's entry of judgment, the motion is treated as a motion to alter or amend under Rule 59(e). If the motion is filed outside the ten-day limit, it can only be addressed under Rule 60(b).

**58**

before the defendants had an opportunity to respond to it. By contrast, the circuit court ruled on the motion to dismiss after considering the briefs and oral arguments of both parties, and analyzing these arguments under the TCPA. The circuit court issued a detailed order explaining its reasons for granting the motion to dismiss. Because we have the briefs the parties filed before the circuit court, the transcript of the oral argument and the circuit court's order before us, we can meaningfully review the circuit court's conclusions. It is difficult to perform a similar review of a form document that cites "alleged" violations.

The plaintiff contends that the citation entitles her to relief pursuant to Rule 59(e) because it is new evidence that has come to light since the dismissal order. However, the plaintiff offers no explanation why the FCC citation could not have been filed and presented to the circuit court prior to entry of judgment. The plaintiff's failure to file her consumer complaint with the FCC prior to the judgment does not make the citation "new evidence" for purposes of Rule 59(e).

Similarly, the plaintiff has failed to show that the circuit court abused its discretion in denying her motion pursuant to Rule 60(b). "A circuit court is not required to grant a Rule 60(b) motion unless a moving party can satisfy one of the criteria enumerated under it." *Powderidge Unit Owners Association v. Highland Properties, Ltd.,* 196 W.Va. 692, 706, 474 S.E.2d 872, 886 (1996). The plaintiff failed to establish that the form citation entitles her to relief under any of the six grounds set forth by Rule 60(b). We therefore find that the circuit court did not abuse its discretion by denying the plaintiff's motion for relief pursuant to Rule 60(b).

### IV. Conclusion

The circuit court's orders granting the defendants' motion to dismiss and denying the plaintiff's motion for post-judgment relief are affirmed.

Affirmed.

Justice KETCHUM delivered the Opinion of the Court.

Justice BENJAMIN, deeming himself disqualified, did not take part in the decision of this matter.